# EXHIBIT D

VOLUME I
PAGES 1-121
EXHIBITS 7

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND
C.A. NO. 06-CV-00053-S-LDA

****************************)
JACK FOLEY, MARY O'DONOGHUE )
AND DAVID ROBBINS, )
Plaintiffs, )
)
v. )
)
STEVEN M. LOEB, BLAD CO. )
AND WILLIAM TRIPP, )
Individually and d/b/a TRIPP )
DESIGN NAVAL ARCHITECTURE, )
Defendants, )
And )
BLAIR BROWN, )
Third-Party Defendant. )
****************************)

DEPOSITION OF STEVEN M. LOEB, a witness called on behalf of the plaintiffs, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Shaunna L. O'Connell, Registered Professional Reporter and Commissioner in and for the State of Rhode Island, at the offices of Morrison Mahoney, LLP, 121 South Main Street, Providence, Rhode Island, on Tuesday, February 27, 2007, commencing at 10:05 a.m.

as Exhibits 1 and 2; is that correct?

A. Yes.

Q. So you're the designated 30(b)6 witness for Blad Co. to testify regarding some subjects attached to Exhibit 2; is that correct?

A. I don't know what 30(b)6 is, so I can't answer that question.

Q. Are you the witness designated by Blad Co. to testify today?

A. Yes.

Q. Thank you. Are you taking any medication today, Mr. Loeb, that would affect your ability to recall, understand or testify?

A. No.

Q. What is your position with Blad Co.?

A. President and secretary.

Q. Are you a director?

A. Yes. Sole director.

Q. Are you the treasurer?

A. If there is one, yes.

Q. Are you a shareholder?

A. Yes.

Q. Are you the only shareholder?

A. Yes.
Q. Are you the only officer?
A. Yes.
Q. Is Blad Co. -- do you know the type of corporation? Is it an LLC, an S-corp or a C-corp?
A. It's a corporation.
Q. Organized under the laws of what state?
A. Delaware.
Q. Who is the registered agent, if you know?
A. I don't remember.
Q. Did you organize Blad Co.?
A. Yes, I did.
Q. When did you organize Blad Co.?
A. In 1990 -- I'm not sure, actually.
Q. What assets does Blad Co. own at the present?
A. A sail boat known as Sirena.
Q. Does it have any other assets?
A. Small bank account.
Q. In what bank is that account?
A. At UBS.
Q. What branch, if you know?
A. I don't know the address.

Co.?
A. 1998 to, I'd say, sometime the beginning of 2003.
Q. Why did he leave?
A. We terminated the racing program.
Q. Why did you terminate the racing program?
A. Because my son was born.
Q. Do you maintain a web site for the boat?
A. There is a web site for the boat.
Q. In whose name is the URL registered?
A. My name.
Q. Not Blad Co.?
A. Correct.
Q. Do you personally pay the expense for maintaining that registration?
A. Yes. So there's no additional expense. It's part of my home e-mail/cable service.
Q. Who created the web site?
A. I did.
Q. From the time Blad Co. was first organized to the present, have you been the sole shareholder at all times?
A. Yes.
Q. Have you been the sole director at all

Q. What else did you review, if anything?
A. That's it.
Q. Moving on to the day of the incident, the incident, for clarity, is a collision or contact between Sirena and Sforzando on July 14th of 2002. Is that an acceptable basis for continuing?
A. Yes.
Q. So when I talk about incident, you understand that it's that?
A. I do.
Q. You entered into a race run by the New York Yacht Club; is that correct?
A. A regatta.
Q. And what regatta was that?
A. New York Yacht Club Race Week Regatta.
Q. Are you a member of New York Yacht Club?
A. I am.
Q. How long have you been a member?
A. I don't recall.
Q. Were you a member at the time when you competed in the New York Yacht Club Race Week 2002?
A. Yes.

Q. And do you recall completing an official entry form for that regatta?

A. I do not, but I must have.

Q. I'm going to put something in front of you that appears to be an entry form and first ask, is that your signature at the bottom?

A. It is.

Q. Does most of the writing appear to be yours?

A. Yes.

MR. COOK: If we could mark this as Exhibit 3, please.

(Exhibit No. 3, New York Yacht Club Race Week at Newport Official Entry Form for Sirena; so marked.)

Q. Mr. Loeb, I'm putting in front of you what's now been marked Exhibit 3, consisting of three pages. Focusing on the first page, you said that that's your signature. Is that your writing, the date, 6/6/02?

A. Yes.

Q. Is that your writing in which you list

yourself as the entrant name?
A. Yes.
Q. And you circled the word "owner"?
A. Yes.
Q. You weren't the owner, were you?
A. Indirectly I was.
Q. And is that your writing where you report that you were to be the helmsman and skipper?
A. Yes.
Q. Did you know when you were entering this -- excuse me -- that when you signed this, you were agreeing to be bound by the rules of the International Sailing Federation and U.S. Sailing Prescriptions?
MR. O'GARA: Objection. You can answer.
A. Yes.
Q. The next two pages, I take it, is the IMS Certificate for Sirena; is that correct?
A. That's correct.
Q. And a measurement inventory apparently signed by Patrick Mannion when the boat was measured in 2000; is that correct?

Q. What was Gary Payne's role?
A. Trimmer.
Q. What was David Langhorn's role?
A. Trimmer.
Q. What was Joe Nanartowich's role?
A. Main trimmer.
Q. What was your role?
A. Helmsman.
Q. What was Bill Tripp's role?
A. Tactician. The last person would have been another trimmer, but I can't recall his name right now. I can see his face, but I can't recall his name.
Q. When was the last time you spoke with Ellen Fetterman?
A. At her wedding.
Q. When was that?
A. I don't recall. A couple years ago.
Q. Do you know where she lives now?
A. I'm not sure.
Q. Do you know her married name?
A. I don't.
Q. Do you know where she works?
A. I do not know where she works now.

A. We were not.
Q. So if you had wanted to, you could have brought in -- as far as you know, you could have brought in anyone you wanted to appear as a witness?
A. Right.
Q. On behalf of Sirena?
A. Yes. But there was little point at that point.
Q. And why was that?
A. Because both boats were already out of the regatta, so the results of the hearing were really of no importance to us.
Q. But you had no objection as to how the hearing was conducted?
A. I did not.
Q. As you sit here today, do you believe the hearing was conducted in accordance with the racing rules and procedures for Protest Committees?
A. Yes.
Q. You have no quarrel as to how the hearing was conducted?
A. I do not.

A. I think both boats should have been disqualified.
Q. Anything else?
A. That's it.
Q. When you found out that only Sirena was disqualified, did you talk to anybody about that?
A. I don't recall.
Q. Did you take any steps as the owner of the Sirena to address the issue of your disagreement?
A. I didn't because it was of no import.
Q. Did you talk to anyone from the yacht club from the Race Committee about the Protest Committee decision afterwards?
A. I did not.
Q. I believe that when you were asked questions by Mr. Cook about where you were just before the impact with Sforzando that you had gone to the deck of the vessel, correct?
A. I fell to the deck, yes.
Q. Were you still on the port side?
A. No.