# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

C.A. NO. 06-CV-00053-S-LDA

JACK FOLEY, MARY O'DONOGHUE and DAVID ROBBINS,
Plaintiffs,

vs.

STEVEN M. LOEB, BLAD CO. and WILLIAM TRIPP, Individually and d/b/a TRIPP DESIGN NAVAL ARCHITECTURE,
Defendants.

v.

BLAIR BROWN,
Third-Party Defendant.

DEPOSITION of JOHN J. SLATTERY, taken on behalf of the Defendant, William Tripp, Individually and d/b/a Tripp Design Naval Architecture, pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Barbara M. Montijo, a Registered Professional Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the offices of Morrison Mahoney, LLP, 250 Summer street, Boston, Massachusetts, on January 16, 2007, commencing at 2:00 p.m.

RHODE ISLAND COURT REPORTING, INC.
747 North Main Street
Providence, RI 02904
(401) 437-3366

was anything unusual.

Q. Did you see anything unusual?

A. Not really. It was pretty straightforward.

Q. And that was all done prior to the beginning of that race week? I think it began July 12th. Everything was done before then?

A. Yes.

Q. Did you take care of registering his boat for that regatta or did he do that?

A. He or one of his representatives would have done that.

Q. Did you yourself sign any documents for that regatta?

A. No. Except maybe a waiver. Most crew members have to sign a waiver to participate in the event and I probably would have signed one for that.

Q. Can you remember specifically?

A. I can't remember specifically. Because all events are different and some don't actually require a waiver.

Q. Do you know if anybody else on board the boat that day signed a waiver?

A. I can't remember specifically. If I did, then

everybody else would have.
Q. And how would that have taken place? Is it something you would have done at the beginning of that day or before the week, the race week began?
MR. COOK: Objection. You can answer. I just need to get an objection on the record.
A. Generally, in the regatta package that's passed out after you've registered, there's a waiver notice that's included in the package. That has to be passed around to the crew members and each one of them has to sign it and it has to be passed back in to the Race Committee office before the start of racing that very first day of racing.
So, generally, we would do that. Generally, almost always we would do that. With a weekend regatta, we'd probably do it the morning of the race most likely, but I can't say that for sure in this circumstance.
Q. Do you know who would have taken on that responsibility, to have those documents executed for this regatta?

MR. COOK: Objection.
A. Jack Foley, most likely.
Q. Now, do you remember who was on board Mr. Brown's boat on July 14th for that race?
A. I couldn't go through the entire crew list, no.
Q. Can you remember any of the names?
A. Well, obviously, I would know the three people that brought us here. We would have Jack Foley, Mary O'Donoghue, and then Dave. I can't think of what Dave's last name is.
Q. David Robbins?
A. David Robbins. Jack Foley would have been on board. Blair Brown would have been there. And I'm not sure who else was on board.
Q. You were on board that day as the tactician?
A. As the tactician.
Q. Were you scheduled the entire race week as the tactician for Mr. Brown?
A. For the part of the race week that we would have been sailing, yes, I would have been.
Q. What were your duties and responsibilities as tactician?
A. A tactician makes sure that the boat is properly aligned for the start, gets the boat started

A. I think so. I think so. SIRENA was almost crossing us; and that's why they thought they could until the very last second. I think. I mean, I don't want to put thoughts into their brains, but that's obviously the case here.
Q. What do you mean SIRENA was almost crossing?
A. They were within feet, a few feet of going across our bow, probably. Including not just the bow, but the stern of the boat, the whole boat. And they didn't -- and their tactician, I think, realized very late in the maneuver that they were most likely not going to cross us. And had they not crossed us, they would have had to have -- we would have protested and they would have had to have done penalty turns. I think that that would have been an issue.
I don't think they were trying to bear down to avoid a collision. I think they were bearing down to avoid that situation where they would have to do penalty turns.
Q. Now, afterwards, the boats both went back into the harbor?
A. Yes.
Q. And there was a -- what did you do once you got


a4f580f1-279a-4220-82d0-2b9601a48aa8

back to the harbor?
A. I went -- well, first, we called the Coast Guard and they came and took some of our crew members off and I went to the New York Yacht Club and I wrote up the protest that's here in our room today. I wrote that myself and I was the sole representative for SFORZANDO.
Q. No one else for that boat appeared at the protest hearing?
A. I don't think so. I don't recall, no.
Q. You handled it entirely for Mr. Brown?
A. Pretty much whenever I do a protest, I do it all completely on my own.
Q. Was there a reason Mr. Brown did not participate?
A. I always find that when more than one party on a boat goes into a protest meeting, the stories get confused. So, I always do it by myself.
Q. And you wrote up the form?
A. I did.
Q. Who represented SIRENA at the hearing?
A. I don't recall. I think it was Bill Tripp, but I don't remember anymore. I think both Bill Tripp and Steve Loeb went to the meeting. I



a4f580f1-279a-4220-82d0-2b9601a48aa8

of us, they would have probably just followed us there. So, it wouldn't have been good. It would have slowed us down.

Q. So, there was no reason for you to do a maneuver to trap them into tacking, was there?

A. No. We wouldn't have wanted them to do that.

MR. COOK: I have no other questions. Thank you.

RE-EXAMINATION BY MR. PLUNKETT

Q. Mr. Slattery, it was important for your boat to beat SIRENA on that date, was it not?

A. No, it wasn't. It was still early in the regatta, so it wasn't that important to beat them. That's the point. It wasn't the finish line of the race. It was the first weather mark.

Q. It was important for your boat to finish ahead of SIRENA, was it not?

A. Yes. Yes.

Q. And if you could get to that mark before SIRENA, that was a good thing for your boat, was it not?

A. Yes. That's correct.

Q. That would put you in a better position in that race, would it not?

A. Yes.
Q. And if you headed your boat upwind a little bit as you approached that mark, you knew that SIRENA could not cross you; is that a fair statement?
A. That would be true, yes.
Q. I'd like you to look at this diagram again in Exhibit Number 2. In response to Mr. Cook's question, you're saying this diagram of your boat SFORZANDO shows your boat after it has borne off?
A. It shows us at 10 degrees off the breeze, which would have had us borne off, yes.
Q. You have no arrows indicating your boat has borne off, do you?
A. No, I don't, but we're not that close on course because the close on course is that line that's next the boat 10 degrees up.
Q. Your diagram, which you submitted to the Protest Committee, shows no alteration of course by your boat; is that correct?
A. It doesn't show us on the line. It does show us 10 degrees below, close on course.
Q. But it doesn't show any alteration in course by


a4f580f1-279a-4220-82d0-2b9601a48aa8

your boat; is that correct?
A. It doesn't show an alteration of course, yes.
Q. And again, you were trying to be most accurate with the Protest Committee, weren't you?
MR. COOK: Objection.
A. In this drawing, no. I clarified this in the protest room later on.
Q. So, it's your testimony you were satisfied with submitting an inaccurate drawing to the Protest Committee?
MR. COOK: Objection.
MR. HOLBROOK: Objection.
A. It's not inaccrate. It's not inaccurate. It's just not perfect.
Q. Let's look at that diagram a little further. You have both boats at the point of collision almost two boat lengths from the mark; is that correct?
A. That's correct.
Q. And you say, according to your other diagram, perhaps they should have been about three boat lengths from the mark?
A. I did say that. I don't recall how far we were from the mark anymore.



a4f580f1-279a-4220-82d0-2b9601a48aa8

Q. So, if we back up the boats one boat length before, we would have SIRENA backed up and it would be heading on the layline to the mark, would it not?

A. Yes.

Q. One boat length before it was on the layline to the mark and it had not borne off downwind; is that correct?

A. Yeah. Yes, that's correct.

Q. And if we back your boat off one boat length, it would have been on the layline to the mark, would it not, or would it have been 10 degrees off?

A. I don't recall anymore.

Q. It still would have been above the line to the mark, correct?

A. Yes.

Q. It could have made the mark without heading up, correct? Your boat?

A. Our boat could have made the mark without heading up, yes.

Q. At that point, if we backed your boat away one boat length, your boat would have been three boat lengths from the mark, correct?

A. That's correct.
Q. At the same point that SIRENA was one boat length from the mark; is that correct?
A. No.
Q. No?
A. No.
Q. Well, SIRENA, if we back it up one boat length, would have been in this box?
A. SIRENA, her bow would have been about two boat lengths from the mark when our bow was about three boat lengths from the mark.
Q. Let's take your diagram --
A. I'm just saying what the case is.
Q. Well, this is the diagram that you submitted to the Race Committee, correct?
A. That's correct.
Q. If we back that up one boat length, SIRENA is on the layline to the mark and it is about one boat length from the mark, correct?
A. That's the way it's drawn there.
Q. That's the way you drew it?
A. Well, I'm not an artist.
Q. And at the same point Mr. Brown's boat would have been back one boat length, the nose of it

would have been three boat lengths from the mark, correct?

A. I just showed the progress of the boats, how they met here. I didn't mean to show how far they were from the mark at any given time in relation to each other. Because, as you can see, I'm drawing a line for SIRENA swishing around and I'm showing SFORZANDO in a static position here in this drawing.

MR. PLUNKETT: I move to strike.

Q. I'm going to ask you again, Mr. Slattery. If we back up each boat one boat length, SIRENA is going to be in this box, correct, and it's going to be one boat length from the mark, according to your drawing?

A. No, I don't agree.

Q. Well, if you move it back on this line one boat length, it's in this box, isn't it?

A. I don't agree. That's not the way I meant to draw it.

Q. Well, that's the way you did draw it, isn't it?

MR. COOK: Objection.

A. No, I don't agree.



a4f580f1-279a-4220-82d0-2b9601a48aa8

Q. If you back that one up one boat length, that's going to -- the nose of it is going to be three boat lengths from the mark?
A. I don't know how the mark came into play here. I really don't recall. It's my testimony that we would have hit them. And so, they could not have been one boat length when we were at three boat lengths. I would say that. So, I would have to say my diagram is not completely accurate.
Q. It's inaccurate? You submitted an inaccurate diagram to the Race Committee; is that what you're saying?
MR. COOK: Objection.
A. Yes.
Q. How about Exhibit 1; is that inaccurate also or is that accurate?
MR. COOK: Objection.
A. Well, it can be no more accurate than the other one.
Q. So that's inaccurate also, Exhibit 1?
MR. COOK: Objection.
MR. HOLBROOK: Objection.
MR. WIENER: What's the basis of your



a4f580f1-279a-4220-82d0-2b9601a48aa8