# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JACK FOLEY, MARY O'DONOGHUE AND DAVID ROBBINS
PLAINTIFF

VS.

C.A. NO. 06-0053 S-LDA

STEVEN M. LOEB, BLAD CO., KEVIN DAILEY, WILLIAM TRIPP, INDIVIDUALLY, AND D/B/A TRIPP DESIGN NAVAL ARCHITECTURE
DEFENDANT

DEPOSITION OF BLAIR BROWN, A WITNESS IN THE ABOVE-ENTITLED CASE, TAKEN ON BEHALF OF THE DEFENDANT, BEFORE PATRICIA QUIRK, CSR, NOTARY PUBLIC IN AND FOR THE STATE OF RHODE ISLAND, AT THE OFFICES OF KIERNAN, PLUNKETT & REDIHAN, 91 FRIENDSHIP STREET, PROVIDENCE, RHODE ISLAND ON MARCH 1, 2007, SCHEDULED AT 9:30 A.M.

10:14:45 SUPPLIES.
10:14:47 Q. AND FOR HOW LONG WAS THAT YOUR OCCUPATION?
10:14:52 A. FROM 1964 UNTIL 1992.
10:14:57 Q. WOULD YOU TELL ME JUST GENERALLY WHAT YOUR
10:15:06 SAILING EXPERIENCE HAS BEEN?
10:15:07 A. I'VE BEEN SAILING SINCE I WAS A YOUNGSTER
10:15:11 IN 1950. I'VE RACED EXTENSIVELY FOR -- SINCE
10:15:19 1978.
10:15:21 Q. DO YOU CURRENTLY KEEP A BOAT?
10:15:24 A. YES.
10:15:24 Q. DO YOU STILL RACE?
10:15:26 A. YES.
10:15:27 Q. WHAT TYPE OF BOAT DO YOU HAVE?
10:15:29 A. I HAVE A 45-FOOT OCEAN RACER.
10:15:33 Q. IS IT THE SAME ONE THAT WAS INVOLVED IN THIS
10:15:37 INCIDENT?
10:15:38 A. YES.
10:15:38 Q. HOW LONG HAVE YOU OWNED THAT BOAT, THIS
10:15:42 SFORZANDO?
10:15:44 A. SINCE 1998.
10:15:46 Q. ALL RIGHT, AND JUST TO JUMP AHEAD A BIT TO
10:15:49 DIRECT YOUR ATTENTION TO THE DAY OF THIS RACE,
10:15:51 ON THAT DATE WERE YOU THE OWNER OF THE BOAT?
10:15:54 A. YES.

10:15:54 Q. THERE WAS NO CORPORATION OR ANY OTHER ENTITY
10:15:58 INVOLVED?
10:15:59 A. NO.
10:15:59 Q. AND WERE YOU THE SKIPPER?
10:16:01 A. YES.
10:16:01 Q. AND YOU UNDERSTOOD THE RULES? WERE YOU THE
10:16:04 PERSON IN CHARGE OF THE BOAT DURING THE RACE?
10:16:07 A. YES.
10:16:09 Q. PRIOR TO COMING HERE TODAY, IF YOU COULD JUST
10:16:12 ANSWER THIS YES OR NO, DID YOU SPEAK WITH
10:16:15 ANYBODY TO PREPARE FOR THIS DEPOSITION, JUST
10:16:18 ANSWER THAT YES OR NO? I UNDERSTAND YOU
10:16:29 PROBABLY SPOKE WITH YOUR LAWYER, THAT'S WHY I
10:16:31 ASK YOU JUST TO ANSWER YES OR NO. I'M NOT
10:16:34 GOING TO GET INTO THE SUBSTANCE OF WHAT YOU
10:16:38 DISCUSSED WITH YOUR LAWYER.
10:16:41 MR. HOLBROOK: DO YOU UNDERSTAND
10:16:42 THE QUESTION?
10:16:44 A. YES. I'VE SPOKEN WITH PEOPLE, BUT NOT TO
10:16:50 PREPARE FOR THIS DEPOSITION.
10:16:52 Q. ALL RIGHT, LET ME ASK YOU THIS, HAVE YOU
10:16:55 SPOKEN WITH -- HAVE YOU SPOKEN WITH YOUR
10:16:58 LAWYER? AGAIN, JUST YES OR NO? HAVE YOU
10:17:01 SPOKEN WITH YOUR LAWYER ABOUT THIS INCIDENT?

10:17:04 A. YES, YES.
10:17:28 Q. AND THE OTHER PEOPLE WITH WHOM YOU'VE SPOKEN
10:17:32 ABOUT THIS, IT WAS NOT IN PREPARATION FOR THIS
10:17:36 DEPOSITION?
10:17:36 A. I'VE SPOKEN WITH OTHER PEOPLE IN THE
10:17:39 YEARS SINCE THIS ACCIDENT. THESE WERE PEOPLE
10:17:42 ON THE BOAT WITH ME.
10:17:43 Q. ALL RIGHT, I'LL GET INTO THAT LATER. DID YOU
10:17:46 REVIEW ANY DOCUMENTS IN PREPARATION FOR THIS
10:17:49 DEPOSITION?
10:17:50 A. NO. WELL -- I -- I'VE READ THE
10:17:55 DEPOSITIONS.
10:17:56 Q. ALL RIGHT, WHAT DEPOSITIONS HAVE YOU READ?
10:18:00 A. THE DEPOSITION FOR DAVE ROBBINS, JACK
10:18:04 FOLEY AND MARY O'DONOGHUE.
10:18:08 Q. HAVE YOU READ MR. SLATTERY'S DEPOSITION?
10:18:11 A. YES.
10:18:13 Q. ON THAT DATE, ON THE DATE OF THE RACE, CAN YOU
10:18:17 REMEMBER WHO WAS ON BOARD THE BOAT?
10:18:20 A. I THINK SO.
10:18:22 Q. COULD YOU NAME THEM FOR ME?
10:18:24 A. THERE WAS THE THREE PEOPLE I JUST
10:18:27 MENTIONED WERE THE PLAINTIFFS, I GUESS, STEVE
10:18:32 CRUSE, JACK SLATTERY, TODD ENGLISH, WARWICK

10:18:43 OLNEY, O-L-N-E-Y, JIM TAYLOR. I CAN'T
10:18:54 REMEMBER THE OTHERS.
10:18:55 Q. LET ME READ OFF A FEW NAMES, ONE YOU
10:19:00 MENTIONED, ENGLISH?
10:19:02 A. TODD ENGLISH.
10:19:10 Q. DO YOU REMEMBER A TODD YANKEE?
10:19:13 A. I'M SORRY, IT'S TODD YANKEE.
10:19:17 Q. DAVID ROBBINS?
10:19:21 A. ANN MARIE ROSE.
10:19:23 Q. MARY O'DONOGHUE, AND /PHREUBG /KEBG KNEE?
10:19:29 A. THAT'S RIGHT.
10:19:29 Q. STEVE CRUSE, JIM TAYLOR, MR. SLATTERY AND
10:19:34 YOURSELF, DO YOU REMEMBER A WOMAN BY THE NAME
10:19:36 OF JANE?
10:19:37 A. THERE WAS ANOTHER WOMAN THERE. I DON'T
10:19:40 REMEMBER HER NAME.
10:19:41 Q. AND MR. FOLEY?
10:19:42 A. RIGHT.
10:19:43 Q. ANYONE ELSE THAT YOU CAN THINK OF WHO WAS ON
10:19:46 BOARD?
10:19:47 A. I CAN'T THINK OF ANY OTHERS.
10:19:49 Q. ON THAT DATE, WHAT WERE MR. SLATTERY'S DUTIES?
10:19:54 A. HE WAS TACTICIAN.
10:19:56 Q. AND WHAT WERE HIS RESPONSIBILITIES DURING THE

10:28:27 A. I DON'T RECALL.
10:28:28 Q. WOULD YOU HAVE RECORDS PERTAINING TO THAT?
10:28:30 A. I THINK I WOULD, YES.
10:28:32 Q. WAS IT BY REGULAR PAYROLL CHECK?
10:28:36 A. I PAID HIM AS A CONTRACT WORKER.
10:28:40 Q. ALL RIGHT, IT WOULD HAVE BEEN A CHECK FROM YOU THEN DIRECTLY TO HIM?
10:28:44 A. RIGHT.
10:28:53 Q. ALL RIGHT, NOW, BEFORE ENTERING INTO THAT REGATTA, DID YOU SIGN ANY DOCUMENTS IN CONJUNCTION WITH THE REGATTA?
10:29:05 A. I ASSUME I DID, YES.
10:29:07 Q. CAN YOU REMEMBER?
10:29:09 A. IT WOULD BE SOME KIND OF CREW -- I WOULD SIGN A CREW WAIVER, AS OTHERS WOULD.
10:29:21 Q. LET ME JUST SHOW YOU THIS. MAY WE MARK THAT?
10:29:49 (DEFENDANT'S EXHIBIT 1 MARKED)
10:29:49 Q. LET ME SHOW YOU, YOU HAVE ONE. MR. BROWN, LET ME SHOW YOU THE ONE WITH THE EXHIBIT MARK ON IT. DO YOU RECOGNIZE THAT?
10:30:04 A. YES, I MEAN, IT'S A WAIVER FORM, ISN'T IT, OR, NO, IT ISN'T. IT'S AN OFFICIAL ENTRY FORM.
10:30:12 Q. DOWN ON THE BOTTOM, ON THE LEFT, DOES THAT

10:30:14 CONTAIN YOUR SIGNATURE?
10:30:16 A. YES.
10:30:16 Q. I SHOULD SAY, IS THAT YOUR SIGNATURE ON THE
10:30:20 ENTRY FORM FOR THAT REGATTA?
10:30:23 A. I ASSUME, YES.
10:30:25 Q. DO YOU REMEMBER SIGNING ANY OTHER DOCUMENTS
10:30:28 BESIDES THIS ONE FOR THE REGATTA?
10:30:31 A. I MIGHT HAVE SIGNED A -- ALTHOUGH THIS
10:30:35 SAYS "WAIVER" I MIGHT HAVE SIGNED A WAIVER
10:30:38 FORM AS WELL. I DON'T RECALL.
10:30:42 Q. HAVE YOU KEPT A COPY OF THAT DOCUMENT?
10:30:46 A. NO, I DON'T KEEP --
10:30:48 Q. THIS ENTRY FORM AND THE WAIVER FORM YOU MAY
10:30:52 HAVE SIGNED, WOULD THEY HAVE BEEN TURNED INTO
10:30:54 THE YACHT CLUB PRIOR TO THE RACE?
10:30:57 A. YES, I ASSUME THAT I SIGNED ANY FORMS
10:31:00 THAT THEY REQUIRED.
10:31:02 Q. AND DO YOU KNOW WHETHER OR NOT ANY OF YOUR
10:31:05 CREW MEMBERS SIGNED ANY FORMS?
10:31:06 A. I ASSUME, IF THEY WERE REQUIRED TO SIGN,
10:31:11 THEY DID.
10:31:11 Q. DO YOU KNOW IF THEY DID?
10:31:12 A. I DON'T KNOW.
10:31:13 Q. WHO WOULD HANDLE THAT? WHO IN THE GROUP WOULD

11:14:07 DON'T KNOW HOW TO DESCRIBE THAT.
11:14:09 Q. THAT'S FINE. WAS MR. SLATTERY TELLING YOU
11:14:11 ANYTHING ABOUT SIRENA DURING THAT PERIOD?
11:14:14 A. YES.
11:14:14 Q. WHAT WAS HE TELLING YOU?
11:14:16 A. HE WAS POINTING OUT TO ME WHERE SHE WAS.
11:14:19 Q. NOW, DID YOU EVER SEE -- DID YOU EVER SEE
11:14:23 SIRENA TURN DOWNWIND?
11:14:26 A. YES.
11:14:27 Q. ALL RIGHT, AND AT THAT POINT, WHAT WAS YOUR
11:14:30 BOAT DOING?
11:14:31 A. WE WERE TURNING DOWNWIND.
11:14:34 Q. SO, WHEN YOU SAW SIRENA TURNING DOWNWIND, YOU
11:14:38 WERE TURNING DOWNWIND ALSO?
11:14:40 A. YES.
11:14:41 Q. DO YOU KNOW WHICH BOAT TURNED FIRST?
11:14:52 A. I DON'T.
11:14:55 Q. ONCE YOU TURNED DOWN, DID YOU LOSE SITE OF
11:14:59 SIRENA UP TO THE POINT OF THE COLLISION?
11:15:02 A. NO.
11:15:02 Q. YOU COULD STILL SEE IT?
11:15:04 A. RIGHT.
11:15:05 Q. SO, YOU SAW SIRENA TURNING DOWN, AND YOU
11:15:09 CONTINUED TO TURN DOWN?

11:15:10 A. WE TURNED DOWN MODESTLY. IT WAS A
11:15:14 QUESTION OF FINESSE AT THAT POINT. HAD WE NOT
11:15:19 TURNED, WE WOULD HAVE PROBABLY SUNK HER. HAD
11:15:24 WE TURNED MORE, WE WOULD HAVE THROWN OUR STERN
11:15:27 INTO HER BOW AND SHE PROBABLY WOULD HAVE SUNK
11:15:32 US. SHE TURNED DOWN SOME, AND WE TURNED DOWN
11:15:37 SOME.
11:15:37 Q. DID YOU CONSIDER TACKING OVER TO THE RIGHT?
11:15:40 A. YOU MEAN HEADING UP INTO THE WIND?
11:15:44 Q. YES. ACTUALLY TACKING OVER TO THE RIGHT?
11:15:46 A. IF WE HAD CRASH TACKED, WE PROBABLY WOULD
11:15:51 HAVE SUNK OUR BOAT. SHE WOULD HAVE -- OUR
11:15:54 PORT SIDE WOULD HAVE GONE INTO YOUR BOW.
11:15:57 Q. OKAY. GO AHEAD.
11:16:01 A. AS IT WAS, IT WAS REMARKABLE HOW THE
11:16:05 COLLISION WAS AS BENIGN AS IT WAS. I DON'T
11:16:09 MEAN TO IMPLY THAT IT WAS BENIGN. IT COULD
11:16:14 HAVE BEEN PHYSICALLY MUCH WORSE ON THE BOAT.
11:16:16 I'M NOT TALKING ABOUT PERSONAL INJURIES.
11:16:20 Q. NOW, SO YOU TURNED DOWN WHILE SIRENA WAS
11:16:26 TURNING DOWN, WHAT HAPPENED?
11:16:28 A. WE, THE BOWS CAME CLOSE TOGETHER AND
11:16:34 EVENTUALLY, AS THE BOATS WIDENED GOING AFTER
11:16:38 THE BOAT, WE HIT AND PROBABLY WE SURGED TWO OR

THREE TIMES. AS I SAID, THERE WAS A SWELL IN RHODE ISLAND SOUND, WHICH IS NOT UNUSUAL, AND THE BOATS WOULD HIT, AND THEN AS A SWELL CAME THROUGH, THEN AS THE SWELL DIMINISHED, THEY WOULD GO APART, AND THEN THEY WOULD MEET AGAIN.

Q. DO YOU KNOW WHAT PARTS OF THE BOAT CAME IN CONTACT?

A. HER STARBOARD SIDE HIT OUR STARBOARD SIDE.

Q. THE --

A. YES, THE PULPITS AND MY FLAGS WERE SNARLED. THE BOAT SPINNAKER PULLS WERE BROKEN. I ASSUME HER SPINNAKER PULL WAS ON THE STARBOARD SIDE. WE HAD BOTH SET UP FOR A MARK ROUNDING?

Q. WHO HAD SET YOUR BOAT UP FOR THE ROUNDING, WAS THAT TODD YANKEE?

A. IT WOULD HAVE BEEN HIM, YES.

Q. NOW, THERE WAS THIS YELLING TO THE OTHER BOAT, TO SIRENA, WAS THERE ANY YELLING TO THE CREW ABOUT THE CLOSENESS OF SIRENA OR THE POTENTIAL OR THE IMPENDING COLLISION?

A. EVERYONE KNEW WHERE SIRENA WAS BY THE